

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 AUG 22  PM 12:09

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHN R. BRIGGS | CIVIL ACTION |
| VERSUS | NO. 04-2951 |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION | SECTION "K" (2) |

## FINDINGS AND RECOMMENDATION

Plaintiff, John R. Briggs, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI, respectively, of the Act.  42 U.S.C. §§ 405(g), 423, 1381a.  This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2E(B).

Fee_____
Process_____
Dktd_____
CtRmDep_____
Doc. No_____

Despite being ordered to file a memorandum of facts and law, Record Doc. No. 5, plaintiff filed a motion for summary judgment. Record Doc. No. 11. Defendant filed a timely reply memorandum. Record Doc. No. 12.

I.      PROCEDURAL HISTORY

According to the ALJ's decision and the hearing transcript, Briggs filed prior applications for SSI and DIB, which apparently alleged the same impairments and the same onset date as the current applications. The first set of applications was denied by an Administrative Law Judge ("ALJ") on June 25, 2002. Plaintiff's appeal was denied by the Appeals Council and became final on August 30, 2002. That decision was not appealed to the district court. (Tr. 13, 332).

Briggs filed the instant applications for SSI and DIB on April 9, 2003, alleging disability since May 23, 2000 because of diabetes, hypertension, depression, hepatitis C, pancreatitis, electrocution injury and anterior cruciate ligament repair. (Tr. 50). After plaintiff's application was denied, he requested a hearing before an ALJ, which was held on May 20, 2004. On June 25, 2004, the ALJ denied plaintiff's application. (Tr. 13-19). After the Appeals Council denied review on August 24, 2004 (Tr. 5-8), the ALJ's decision became the final decision of the Commissioner for purposes of this court's review.

At the hearing, the ALJ raised the issue whether the June 25, 2002 denial of plaintiff's first set of applications was res judicata and barred Briggs from alleging an onset date of May 23, 2000 in the instant matter. (Tr. 332). Although the ALJ mentioned the previous denial in his final decision, he did <u>not</u> hold that the prior denial was res judicata as to all claims made prior to June 25, 2002. Instead, he analyzed plaintiff's current applications using the alleged onset date of May 23, 2000.

"If the Commissioner reviews the entire record and renders a decision on the merits, the earlier decision will be deemed to have been reopened, and any claim of administrative res judicata to have been waived and thus, the claim is subject to judicial review." <u>Byam v. Barnhart</u>, 336 F.3d 172, 180 (2d Cir. 2003) (quotation omitted) (citing <u>Kasey v. Sullivan</u>, 3 F.3d 75, 77-78 (4th Cir. 1993); <u>Brown v. Sullivan</u>, 932 F.2d 1243, 1246-47 (8th Cir. 1991); <u>Coup v. Heckler</u>, 834 F.2d 313, 317 (3d Cir. 1987); <u>Malave v. Sullivan</u>, 777 F. Supp. 247, 251-52 (S.D.N.Y. 1991)) (additional citations omitted).

Accordingly, the Commissioner's res judicata defense has been waived and this court considers plaintiff's application as validly alleging an onset date of May 23, 2000, just as the ALJ did.

II.   STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.   The ALJ erred in failing to find that Briggs met Listing 12.02.

B.   The ALJ failed to discuss the reasons for determining that plaintiff's impairments did not meet or equal the criteria for a listed impairment.

C.   The ALJ violated 20 C.F.R. § 404.1527 when he failed to accord adequate weight to the opinion of plaintiff's treating physicians but erroneously gave great weight to the opinion of a consultative examiner.

D.   The ALJ failed to consider all of plaintiff's impairments when finding that Briggs has the residual functional capacity to perform light work, thus rendering the testimony of the vocational expert unsubstantiated.

III.   ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following relevant findings:

1.   Plaintiff's status post-surgery for a torn knee ligament, diabetes, hepatitis C and major depression are severe impairments.

2.   His impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

3.   Plaintiff's allegations regarding his limitations are not totally credible.

4.   Briggs has the residual functional capacity to perform a limited range of light work. He has moderate limitations in concentration, persistence and pace, which limit him to lower stress, routine types of work. He cannot climb ladders, ropes or scaffolds because of his history of knee problems.

4

     5.      Briggs cannot return to his past relevant work.

     6.      There are a significant number of jobs in the regional and national economies that plaintiff could perform, such as personnel clerk, library clerk, records clerk, bookkeeping/accounting/audit clerk, sedentary or light assembly worker and sewing machine operator.

(Tr. 16-18).

IV.    ANALYSIS

    A.    Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 389 (5th Cir. 2000); Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Loza, 219 F.3d at 393; Spellman, 1 F.3d at 360. This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." Newton v. Apfel, 209 F.3d 448, 452 (5th

Cir. 2000).  The Commissioner, rather than the courts, must resolve conflicts in the evidence.  Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible.  See Arkansas v. Oklahoma, 503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it.  Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990); Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for DIB and SSI,[1] plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42  U.S.C.  §§  423(d)(1)(A),  1382c(a)(3)(A).   The  Commissioner  has promulgated regulations that provide procedures for evaluating a claim and determining

---

[1]The relevant law and regulations governing a claim for DIB are identical to those governing a claim for SSI.  Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994); Hollis v. Bowen, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988).

disability.  20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998

(2004).  The regulations include a five-step evaluation process for determining whether

an impairment prevents a person from engaging in any substantial gainful activity.  Id. §§

404.1520, 416.920; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[2]  The five-step

inquiry terminates if the Commissioner finds at any step that the claimant is or is not

disabled.  Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

　　　The claimant has the burden of proof under the first four parts of the inquiry.

Newton, 209 F.3d at 453.  If he successfully carries this burden, the burden shifts to the

---

[2]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing. When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding. Id.

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history." Martinez, 64 F.3d at 174.

B.     Factual Background

Plaintiff testified that he has had hepatitis C, the anterior cruciate ligament problem with his left knee, diabetes and high blood pressure since he filed his first application for benefits. (Tr. 333). He said he had been diagnosed with pancreatitis at about the same time.

Briggs stated that he has not worked since he was electrocuted, although he could not recall the year when that happened. (Tr. 334). He said he had been electrocuted while working for the Virgin Islands government, installing a new power supply at a sewerage treatment plant. (Tr. 335). He testified that the electric charge threw him into

a pit, that he hyper-extended and broke his left leg and that he had to crawl out of the pit before anyone found him. (Tr. 336).

Plaintiff said the only jobs he ever had were as an electrical subcontractor and working on cars. He stated that, as a result of being electrocuted, he has problems with his short-term memory and his hand/eye coordination. He said that an MRI had been performed on his head but he had lost the paperwork concerning it when he was living in the Virgin Islands. (Tr. 337-38).

Briggs stated that he has trouble concentrating and that his hand/feet coordination is not as good as it used to be. As an example of his loss of motor control, he said that he broke his ankle when he tried to step over a curb, missed, stepped on the curb and fell. He said he has difficulty getting out of the shower some days and has to be very careful, especially if it is wet. He testified that "it's like I'm walking on my feet." (Tr. 338).

Plaintiff stated that he has difficulty operating a car every now and then. (Tr. 338-39). He said that he was driving in a parking lot two days before the hearing when someone pulled into his one-way lane going the wrong way. Briggs stated that he hit the other car's mirror when he tried to go around it and that the police officer who responded to the accident confiscated his driver's license. He said he was trying to get home because he needed his insulin, but everything went wrong that day. (Tr. 339).

9

Briggs testified that he had an accident on Interstate 10 two or three months earlier when he was passing a truck and a car came up behind him going extremely fast. He said he pulled over in front of the truck, had to slow down because of the car in front of him, hit the curb and destroyed his car. He said he does not trust himself to drive any more.

Plaintiff stated that he had fallen off his bicycle two days earlier. (Tr. 340). He said that his bike's sprocket caught when he tried to jump a curb to get on to the sidewalk, he did not make it over the curb and he fell in the street and almost was run over by a car. He said the accident tore up his legs. He stood up at the hearing and showed the ALJ his leg injuries. (Tr. 341). The ALJ noted that Briggs was wearing an ACE bandage or knee brace on his left knee, which plaintiff said he has worn regularly since his anterior cruciate ligament surgery in August 1999. (Tr. 341-42).

Briggs testified that he injects insulin twice a day and watches his diet, which he said is the hardest part of trying to control his diabetes because he is not a good cook. He said he thought he was supposed to take an oral medication but could not remember if his

10

doctor had prescribed one.  He stated that he takes lisinopril[3] for high blood pressure and Lexapro[4] for depression.

Plaintiff testified that he does not take anything for his hepatitis C because he cannot afford any treatment.  (Tr. 343).  He said he understands that hepatitis C is incurable and he thinks about it a lot and reads everything he can about it.  He stated that he also has pancreatitis, for which he takes no medication, but he watches his diet and strictly avoids any alcohol.

Briggs testified that he had tried to work for a company called 180 Connect, which was marrying coaxial cable with the telephone company so that customers could get their cable, telephone and high-speed internet service from one provider, either the cable company or the telephone company.  (Tr. 344).  He said he was working with a crew that was wiring apartment complexes, digging ditches between the units, then setting boxes to tie all the units together.  He stated that the men with whom he was working told him that he was unable to work as hard and produce as much as they did.  (Tr. 345).  He said the work involved a lot of use of his hands and upper arms and climbing of ladders.

---

[3]Lisinopril is an oral long-acting ACE (angiotensin converting enzyme) inhibitor that is used in the treatment of high blood pressure.  Physicians' Desk Reference 2123, 2124 (59th ed. 2005).

[4]"Lexapro is an orally administered selective serotonin reuptake inhibitor (SSRI), indicated in the treatment of major depressive disorder and generalized anxiety disorder.  Id. at 1282, 1283.

(Tr. 345-46). He testified that he could no longer climb ladders or walk across pipe racks like he used to do when he was younger. (Tr. 346).

Plaintiff stated that his diabetes has affected his vision and he now has to use glasses to read the computer and fine print, but he has no problem seeing at a distance. (Tr. 346-47). He said he does not sleep at night but lies awake, listens to the radio or reads on the computer. He said he usually sleeps between 5:00 and 7:00 a.m., then showers, fixes breakfast and takes his insulin injection. He testified that he takes a walk for about 20 minutes if the weather is cool and then goes back to the computer. Plaintiff stated that he likes to use the computer because it "opens the world up to you" and he loves to do research. (Tr. 347). He testified that he does not do much in the evenings but sits on his porch swing and tries to think of some way to make money. He said he went through two years of college and attended a lot of technical schools when he worked at the refinery, but never obtained a degree. (Tr. 348, 359).

Briggs testified that he lives by himself in an apartment next to his parents and that he still smokes cigarettes, although he has tried to quit. (Tr. 348). He said that he owns a computer and that lately he has been in a reading mode and would spend 10 hours a day on the computer if he could. He said that sometimes he will not turn it on for a month but that now he has 400 e-mail messages to answer. (Tr. 349).

12

C.    Testimony of Plaintiff's Father

Plaintiff's father, Charles Briggs ("Mr. Briggs"), testified that his is 73 years old and sees his son daily. (Tr. 351, 355). He said that he has provided all the financial help he could since his son was electrocuted and that his son had inherited some money from his grandfathers. (Tr. 351-52). He stated that he had noticed a change in his son's perception, certainly in the last five to six months and perhaps in as much as the last year. Mr. Briggs said that his son often does not remember whether it is Saturday or Sunday. (Tr. 352).

Plaintiff's father said that the only traumatic event that had happened within the last year, which might have caused or contributed to the change in his son's perception ability, was that plaintiff had totaled his car on Interstate 10 around July 2003. Mr. Briggs said it was a wonder that plaintiff was not killed, but no one was hurt in the accident. He stated that he gave his son another car to use and his son hit a curb with that car about three or four months before the hearing. He testified that plaintiff was having real trouble with his left eye at that time. (Tr. 353). He said this second accident scared him because he was seeing a pattern in his son's behavior.

Mr. Briggs testified that plaintiff's doctor told him that his son's glucose was fluctuating a lot, that the oral medications were not working and that plaintiff needed to

start taking insulin. Plaintiff's father said he provided some more money so that his son could take insulin, which plaintiff began taking about two months before the hearing. He stated that he could see some improvement in his son's condition after he started the insulin. He said that his son takes the insulin himself without any monitoring from his parents. (Tr. 354).

Mr. Briggs testified that he bought a bicycle for plaintiff so he could exercise and that he also provided his son with a cell phone. He said his son called him the week before the hearing and he could tell that something was really wrong. He stated that plaintiff had passed out on the street while riding his bike, injured his head and was almost run over by a car. He said his son's condition just continued to deteriorate. (Tr. 355).

Plaintiff's father stated that his son had never been employed in any other field besides electrical work. He testified that his son tried to return to work after being electrocuted by working with a cable company but that the job only lasted about a week. He said his son's supervisor told him that his son was a good worker but was hurting so badly that he just could not do the job. (Tr. 356-57). He said the supervisor told him that plaintiff could not work for more than four or five hours. (Tr. 357).

D.    Vocational Expert Testimony

Vocational expert, Douglas Kuylen, testified that plaintiff's past occupation was a skilled job.  The ALJ posed a hypothetical of a claimant who can lift and carry 20 pounds occasionally and 10 pounds frequently; can occasionally climb, balance, stoop, kneel, crouch and crawl; cannot climb ladders, ropes or scaffolds; and can perform only routine, repetitive work without any high stress.  The vocational expert stated that such a claimant could not perform plaintiff's past relevant work. (Tr. 350).

Kuylen testified that the claimant could perform entry level, sedentary and light clerical jobs that are available in Louisiana and nationally, such as personnel clerk, library clerk, records clerk and bookkeeping, accounting or auditing clerk.  He said that other available sedentary and light entry level jobs include assemblers, bench workers and textile sewing machine operators.  (Tr. 361-62).

The vocational expert testified that a person who misses two days of work per month or who could not work a standard schedule with two fifteen-minute breaks and a lunch break per day would not be able to hold a job.  (Tr. 363-64).

On cross-examination by plaintiff's attorney, Kuylen testified that he did not review plaintiff's medical records, did not interview plaintiff and did not conduct any academic or vocational testing on him.  He stated that a person with moderate to severe loss of

concentration would not be able to remain task-oriented and would not be capable of working full-time. (Tr. 366).

E.    Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence. (Tr. 15-16). I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections, and highlights noted below.

F.    Plaintiff's Appeal

1.    *The ALJ did not err in failing to find that Briggs met a listing for mental impairment.*

2.    *The ALJ did not fail to discuss the reasons for determining that plaintiff's impairments did not meet or equal the criteria for a listed impairment.*

Plaintiff asserts in these two related assignments of error that the ALJ erred by failing to find that he meets or equals Listing 12.02, which applies to organic mental disorders. However, in the text of his memorandum, he argues that the ALJ erred by failing to find that Briggs meets or equals Listing 12.04, which applies to affective disorders, including depression. He also contends that the ALJ failed to discuss his reasons for determining that plaintiff's impairments do not meet or equal any listing.

16

> For a claimant to show that his impairment matches a listing, it must meet <u>all</u> of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. See Social Security Ruling (SSR) 83-19, Dept. of Health and Human Services Rulings 90 (Jan. 1983) ("An impairment 'meets' a listed condition . . . only when it manifests the specific findings described in the set of medical criteria for that listed impairment." "The level of severity in any particular listing section is depicted by the <u>given set</u> of findings and not by the degree of severity of any single medical finding--no matter to what extent that finding may exceed the listed value"). <u>Id.</u>, at 91. (Emphasis in original.)

<u>Sullivan v. Zebley</u>, 493 U.S. 521, 530-31 (1990) (footnotes omitted) (emphasis in original); <u>accord</u> <u>McCuller v. Barnhart</u>, No. 02-30771, 2003 WL 21954208, at *3 (5th Cir. Aug. 15, 2003); <u>Selders v. Sullivan</u>, 914 F.2d 614, 619 (5th Cir. 1990).

No diagnosis of an organic mental disorder appears in the record. Plaintiff's treating physician at the LSU Family Practice Clinic, Dr. Ken Yamato, ordered an MRI of plaintiff's brain to be performed on July 9, 2003 to rule out an organic brain injury, after Briggs had complained of recent changes in his cognitive functioning, including problems concentrating and finding tasks confusing which used to be easy. (Tr. 257). However, there is no evidence of any such test having been performed and there is no other mention of organic brain disorder in the extensive medical records.

As to Listing 12.04 for affective disorders, the ALJ specifically considered this listing and explained his reasons for rejecting it. He found that, despite his diagnosis of depression, Briggs has no marked or extreme limitations in functioning that would satisfy

subparagraph B of the listing and that the criteria of subparagraph C were not met. Specifically, the ALJ found that Briggs exhibited no more than mild limitations in his activities of daily living and social functioning and only moderate limitations in his ability to maintain concentration, persistence or pace. The ALJ also noted that the record contained no evidence of any extended periods of decompensation. (Tr. 15, 16).

To satisfy Listing 12.04, Briggs must show that he meets either the requirements of both subparagraphs A and B or the requirements of subparagraph C.

Subparagraph B[5] requires a showing that plaintiff's depressive disorder results in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(B) (2004).  "Marked" means "more than moderate, but less than extreme."  Id. § 12.00(C).

Subparagraph C, in relevant part, requires a

[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and . . . :

---

[5]The ALJ pretermitted consideration of Subparagraph A and the court does as well.

1.  Repeated episodes of decompensation, each of extended duration;[6] . . . .

Id. § 12.04(C).

Substantial evidence supports the ALJ's conclusions concerning Listing 12.04.  As

to plaintiff's activities of daily living, he testified that he lived by himself and took care

of his personal needs, including administering insulin injections twice daily, showering,

grocery shopping and cooking; took short walks; drove a car and rode a bicycle (at least

until a few days before the hearing); listened to the radio; and spent a lot of time doing

research and communicating with others on the computer.  Briggs told Sheldon Hersh,

M.D., an internist,[7] during a consultative examination on July 3, 2003 that he watches

television, reads, rides the bus, shops, cooks and handles his own finances.  Although he

told Dr. Hersh that he does not visit friends or family, he also reported that "he goes out

of the house 'a lot.'"  (Tr. 300, 301).  In an undated Disability Supplemental Interview

Outline, Briggs wrote that he likes to be around friends and that, although he does not get

---

[6]"Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. . . . The term repeated episodes of decompensation, each of extended duration in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks."  Id. § 12.00(C)(4).

[7]Although Briggs correctly notes that Dr. Hersh's qualifications are not noted in the record, the court is aware from its review of prior SSA disability cases that Dr. Hersh is an internist.  See Manuel v. Massanari, No. 01-2043, 2002 WL 662944, at *2 (E.D. La. Apr. 22, 2002) (Berrigan, C.J.) (noting that Dr. Hersh is an internist).

out as much as he used to, he tries to visit someone a couple of times per week or he "go[es] crazy," and he does not need help to go on those visits. (Tr. 93, 97).

Briggs reported to his doctors at times and testified at the hearing that he has problems concentrating. His father stated that he has noticed changes in his son's "perception" in the last six to eight months, which included an inability to remember what day it was and possibly some trouble when driving or riding a bicycle. However, Mr. Briggs also testified that he had noticed some improvement in the past two months since his son started taking insulin.

Moreover, as noted above, plaintiff told Dr. Hersh in July 2003 that he enjoys reading. Briggs testified that he loves researching on the computer and that at times he could spend as much as 10 hours per day on the computer. Aside from plaintiff's own testimony, which the ALJ found to be not credible, no record evidence supports any marked limitation in his ability to concentrate.

The ALJ has the responsibility to evaluate the credibility of witnesses, Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002), and his evaluation is entitled to considerable deference by this court. Falco v. Shalala, 27 F.3d 160, 164 & n.18 (5th Cir. 1994); Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991); Villa, 895 F.2d at 1024. The ALJ's explanation of his reasons for finding plaintiff not entirely credible is all that

is required. <u>Falco</u>, 27 F.3d at 163-64; <u>Godbolt v. Apfel</u>, No. 98-1680, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999) (Vance, J.); <u>accord</u> <u>James J. Flanagan Stevedores, Inc. v. Gallagher</u>, 219 F.3d 426, 430 & n.8 (5th Cir. 2000) (citing <u>Falco</u>, 27 F.3d at 164).

The ALJ in this case explained that plaintiff's testimony concerning his subjective pain and functional limitations was not credible because his alleged sudden worsening of symptoms was not supported by the objective medical evidence and because his ambivalence about pursuing treatment for his depressive symptoms undermined the alleged severity of those symptoms. (Tr. 16). The ALJ's findings in this regard are substantially supported by the record evidence.

The ALJ also correctly noted that the record contains no evidence of any extended periods of decompensation.

Plaintiff argues that the ALJ disregarded Leone's testimony because he did not mention it in his opinion. She contends that Leone's testimony that plaintiff is unable to work, combined with her own testimony, which the ALJ found generally credible, and the medical evidence confirm her functional limitations.

As part of this assignment of error, Briggs argues that the ALJ failed to mention his father's testimony at all, which he contends supported his own testimony. First, his father is not an acceptable medical source but a lay witness, whose testimony can be

accorded less weight in establishing an impairment than that of an acceptable medical source.  20 C.F.R. §§ 404.1513(a), (d); 416.913(d); Strunk v. Barnhart, No. 03-5164, 2004 WL 2307354, at *1 & n.1 (10th Cir. Oct. 13, 2004); Giese v. Barnhart, No. 01-17196, 2002 WL 31856116, at *2 (9th Cir. Dec. 19, 2002); Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991).

Second, the ALJ's failure to discuss specifically the testimony of plaintiff's father does not undermine the ALJ's findings in any way.  The ALJ is entitled to judge the credibility of Mr. Briggs's testimony, just as with any other witness, and to discount such testimony in the absence of "[s]upporting, objective findings . . . because the observations of an individual, particularly a lay person, may be colored by sympathy for the affected relative or friend and influenced by that person's exaggeration of his limitation."  Harrell v. Bowen, 862 F.2d 471, 482 (5th Cir. 1988); accord Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000) (citing Lorenzen v. Chater, 71 F.3d 316, 319 (8th Cir. 1995)).

Furthermore, "procedural perfection in administrative proceedings is not required and procedural improprieties will constitute a basis for remand only if they would cast into doubt the existence of substantial evidence to support the decision."  Ferguson v. Barnhart, No. 02-849, 2003 WL 21277130, at *1 (E.D. La. May 30, 2003) (Duval, J.) (citing Morris v. Bowen, 864 F.2d 333, 335 (5th Cir. 1988) (citing Mays v. Bowen, 837

22

F.2d 1362, 1364 (5th Cir. 1988)); accord Anderson v. Sullivan, 887 F.2d 630, 634 (5th Cir. 1989). The ALJ's failure to discuss expressly Mr. Briggs's testimony is not error that prejudices plaintiff's substantive rights, Morris, 864 F.2d at 335; Sartain, 2000 WL 193067, at *4, because the ALJ's findings are otherwise supported by substantial evidence.

Thus, the record substantially supports the ALJ's findings that Briggs does not meet Subparagraph B of Listing 12.04 because he has no more than mild limitations in his activities of daily living and social functioning and does not meet Subparagraph C because he has had no extended episodes of decompensation. Furthermore, the ALJ did explain his reasons for those conclusions.

Accordingly, these assignments of error lack merit.

3. *The ALJ did not fail to accord adequate weight to the opinion of plaintiff's treating physicians and did not erroneously give great weight to the opinion of a consultative examiner.*

The record contains a letter dated April 12, 2004 "to whom it may concern" from Christopher D. Naquin, M.D., of Destrehan Family Health Center. Dr. Naquin states that he has been treating Briggs since July 10, 2003 and that plaintiff's electrocution injury has left him with problems with memory, concentration, anxiety and depression. Dr. Naquin recites plaintiff's diagnoses of status post anterior cruciate ligament rupture in his left

23

knee, diabetes, high blood pressure and chronic hepatitis C and says that plaintiff is being

currently treated for those conditions, but Dr. Naquin does not say by whom. Dr. Naquin

opines that Briggs "has significant disability from his medical problems that causes him

to be unable to perform duties of employment. . . . . [N]ote that this is not a disability

evaluation but my opinion on Mr. Briggs' ability to work." (Tr. 320).

The ALJ found that Dr. Naquin's opinion regarding plaintiff's ability to work was

"inconsistent with the record as a whole." (Tr. 16). Citing 20 C.F.R. § 404.1527, Briggs

argues that the ALJ erred when he failed to accord adequate weight to the opinion of

plaintiff's treating physicians and erroneously gave great weight to the opinion of a

consultative examiner, Dr. Hersh. Briggs does not cite any specific medical evidence

other than Dr. Naquin's opinion to which the ALJ allegedly gave inadequate weight.

> The opinion of the treating physician who is familiar with the claimant's
> impairments, treatments and responses, should be accorded great weight in
> determining disability. A treating physician's opinion on the nature and
> severity of a patient's impairment will be given controlling weight if it is
> well-supported by medically acceptable clinical and laboratory diagnostic
> techniques and is not inconsistent with . . . other substantial evidence. The
> opinion of a specialist generally is accorded greater weight than that of a
> non-specialist.
>
> Even though the opinion and diagnosis of a treating physician should be
> afforded considerable weight in determining disability, the ALJ has sole
> responsibility for determining a claimant's disability status. The ALJ is free
> to reject the opinion of any physician when the evidence supports a contrary
> conclusion. The treating physician's opinions are not conclusive. The

> opinions may be assigned little or no weight when good cause is shown. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

Newton, 209 F.3d at 455-56 (citations and quotations omitted).

The Fifth Circuit held in Newton "that, absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." Id. at 453.

However, in this case, reliable medical evidence conflicts with Dr. Naquin's opinion. Therefore, the ALJ was not required to analyze specifically all of the factors set forth in 20 C.F.R. § 404.1527(d)(2).

Furthermore, good cause exists for the ALJ to discount Dr. Naquin's opinion. Dr. Naquin's April 12, 2004 opinion is conclusory and is unsupported by medically acceptable clinical, laboratory or diagnostic techniques. The single letter in the record from Dr. Naquin does not reveal his specialty, if any. No medical records support Dr. Naquin's assertion that he has treated Briggs since July 10, 2003. There is no evidence of how many times, for what conditions, based on what diagnostic tools and with what

25

therapies Dr. Naquin was treating plaintiff. In these circumstances, good cause permitted the ALJ to give no weight to Dr. Naquin's opinion concerning plaintiff's ability to work.

In addition, Dr. Naquin's opinion is otherwise unsupported by the evidence. None of plaintiff's other treating physicians restricted him from working. Indeed, Dr. Yamato on April 3, 2003 recommended that plaintiff try to get a job as a way of coping with or lessening his depression and the physician referred Briggs to East Jefferson Medical Health Center for assistance with job placement. There is no evidence that plaintiff followed up with this referral. A claimant's failure to comply with his treatment regimen can be an indication of lack of disability. Villa, 895 at 1024.

Moreover, Dr. Hersh conducted a thorough physical examination on July 3, 2003 and evaluated each of plaintiff's medical conditions. He found that plaintiff's physical examination was essentially unremarkable, including a full range of motion in plaintiff's extremities and back and an intact neurological examination. He opined that, aside from plaintiff needing better control of his blood pressure and blood sugar, plaintiff's hypertension, non-insulin dependent diabetes,[8] bilateral knee pain and depression were all stable. Dr. Hersh did not assign any work-related limitations, except to say that Briggs should avoid stressful jobs.

---

[8]Plaintiff's father testified that Briggs improved after he began taking insulin in early 2004.

26

As he is clearly entitled to do, the ALJ in this case weighed conflicting medical opinions and resolved the conflict in favor of rejecting Dr. Naquin's opinion that plaintiff could not work. Newton, 209 F.3d at 452; Moore, 919 F.2d at 905. Accordingly, Briggs has failed to establish that the ALJ erred in this respect.

> 4.    *The ALJ did not fail to consider all of plaintiff's impairments when finding that Briggs has the residual functional capacity to perform light work.*

Briggs argues that the ALJ failed to consider all of his impairments when finding that he has the residual functional capacity to perform light work, thus rendering the testimony of the vocational expert unsubstantiated. He contends that the ALJ failed to consider the problem with coordination of his arms and legs to which Briggs testified, his broken ankle, his difficulty concentrating, his pain and his fatigue, all of which he asserts prevent him from doing light work.

First, there is no evidence that a broken ankle would be expected to cause a disabling impairment that would last for 12 months, and plaintiff did not testify that he was still suffering from the effects of the broken ankle at the hearing. Thus, plaintiff's broken ankle could not cause a disability for purposes of the Act, even if it were supported by medical records, which it is not.

27

Second, no medical evidence corroborates plaintiff's problem with coordination of his arms and legs. To the extent that such a problem might present a new impairment or a deterioration of a previously non-disabling condition, the appropriate action for such evidence is to use it as the basis for a new disability application. <u>Leggett</u>, 67 F.3d at 567.

As to plaintiff's problems with concentration, the ALJ specifically found moderate limitations in plaintiff's ability to concentrate. That limitation was included in the ALJ's residual functional capacity finding and in his hypothetical to the vocational expert as a restriction to non-stressful, routine work.

Finally, the ALJ also considered plaintiff's complaints of pain.

Whether pain is disabling is an issue for the ALJ, who has the primary responsibility for resolving conflicts in the evidence. It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference. The determination whether an applicant is able to work despite some pain is within the province of the administrative agency and should be upheld if supported by substantial evidence. Moreover, pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment to be disabling. Subjective complaints of pain must also be corroborated by objective medical evidence.

<u>Chambliss v. Massanari</u>, 269 F.3d 520, 522 (5th Cir. 2001) (citing <u>Carrier</u>, 944 F.2d at 247; <u>Wren v. Sullivan</u>, 925 F.2d 123, 128 (5th Cir. 1991); <u>James v. Bowen</u>, 793 F.2d 702, 706 (5th Cir. 1986); <u>Jones v. Heckler</u>, 702 F.2d 616, 622 (5th Cir. 1983); <u>Falco</u>, 27 F.3d 160, 163 (5th Cir. 1994); <u>Houston v. Sullivan</u>, 895 F.2d 1012, 1016 (5th Cir. 1989)).

The ALJ's evaluation of plaintiff's credibility is also entitled to considerable deference. Falco, 27 F.3d 160, 164 & n.18 (5th Cir. 1994); Carrier, 944 F.2d 243, 247 (5th Cir. 1991); Villa, 895 F.2d at 1024.

The ALJ found that plaintiff could be expected to suffer some pain and fatigue as a result of his impairments, and he limited the range of work activities that Briggs could perform because of his knee problems. As the ALJ stated, the objective medical evidence does not substantially support the severity of pain and functional limitations that Briggs alleged. A chest x-ray on August 8, 2000 revealed mild dextrodorsal scoliosis. (Tr. 246). An abdominal CT scan on September 9, 2000 revealed only slight hepatomegaly. (Tr. 171). An x-ray of plaintiff's left knee on April 23, 2001 was "grossly normal," revealing only slight patellar spurring and a slight narrowing of the medial tibiofemoral joint compartment. (Tr. 241). An x-ray of plaintiff's right knee on July 5, 2001 revealed only "subtle degenerative osteoarthritic changes" and a "small knee effusion without demonstrable acute osseous effect." (Tr. 240). A right knee x-ray on July 3, 2003 was normal. An x-ray of plaintiff's lumbar spine on the same date showed narrowing of the twelfth dorsal and first lumbar interspaces compatible with degenerative disc disease. (Tr. 304).

29

Plaintiff's pancreatitis, which had caused abdominal pain, was under control by his avoidance of alcohol, according his own testimony and the medical records. The medical records in general, although they contain occasional references to knee pain, do not reflect significant complaints of knee, leg or back pain.

Plaintiff's physical examinations throughout the record, including the one by Dr. Hersh on July 3, 2003, consistently revealed normal range of motion in plaintiff's back and in all joints, intact cranial nerves and normal motor strength, muscle tone, sensation, reflexes and gait. (Tr. 215, 226, 233, 275, 302). In addition, Dr. Hersh noted that Briggs sat comfortably during the examination without discomfort in his back, got on and off the table without assistance or complaints of pain, had a negative straight leg raising test, had no tenderness or spasm in his back and did not limp or use a cane. (Tr. 302).

Accordingly, the ALJ's assessment of plaintiff's residual functional capacity is supported by substantial evidence.

## CONCLUSION

The ALJ did not err in failing to find that Briggs met Listing 12.02 or 12.04. The ALJ adequately discussed his reasons for determining that plaintiff's impairments did not meet or equal the criteria for a listed impairment. The ALJ did not err by discounting the opinion of Dr. Naquin and by according great weight to Dr. Hersh's opinion. The ALJ

considered all of plaintiff's impairments when finding that Briggs has the residual functional capacity to perform light work,   Substantial evidence in the record supports the ALJ's findings.

## RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).


New Orleans, Louisiana, this __22d__ day of August, 2005.


JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

31